CITY OF ROCHESTER v. GRAY, Commissioner of Highways.

(Supreme Court, Trial Term, Livingston County. February 3, 1910.)

NAVIGABLE WATERS (§ 40*)—RIGHTS OF PUBLIC—INALIENABLE RIGHTS—RIGHT OF ACCESS.

    Laws 1895, c. 1018, which empowers a city, the source of whose water supply was a navigable lake, to acquire the shore of the lake within 200 feet of the water line, to guard against contamination of the waters, in empowering commissioners, appointed under the act, to remove any highway or portion thereof within said 200 feet, reconstructing it elsewhere, does not, in case of a highway over which the public had access to the lake, which is cut off by its removal, take away any inalienable right in the public of access to the lake.

    [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 40.*]

Action by the City of Rochester against Patrick J. Gray, as Commissioner of Highways, for injunction. Judgment for plaintiff.

See, also, 133 App. Div. 352, 117 N. Y. Supp. 1091.

B. B. Cunningham, for plaintiff.

Edwin A. Nash, for defendant.

BENTON, J. The plaintiff is a municipal corporation. Its source of water supply is Hemlock Lake. It desired to guard the waters of the lake from contamination, and secured the passage of chapter 1018 of the Laws of 1895, whereby it was empowered to acquire for the use of the city the shore of the lake within 200 feet of the water line. The act also provided that the commissioners appointed thereunder might at any time take any highway or portion thereof within said 200 feet, but required them to reconstruct said highway in a manner satisfactory to the highway commissioner of the town in which it was located, and in a way so as not to materially interfere with public travel.

The commissioners, acting under said law, changed the route of the highway in the town of Livonia running east and west for a distance along the northerly shore of the lake. The commissioners rerouted this line along the lake shore for a distance of some 1,525 feet, but still within 200 feet from the high-water mark of the lake. So far as convenience of travel is concerned, the new line is equal, if not better, than the old; but access to the lake by the public is by the change of route in the road cut off, save by passing over private property.

The work was done to the satisfaction of the highway commissioner, but he did not assent to the change of route, and entered upon the old route, and was proceeding to improve or repair the road thereon, when this action was begun to restrain him from so doing. The constitutionality of the law, so far as affected by section 18, art. 3, subd. 2,

---

of the Constitution, was sustained on appeal.    133 App. Div. 852, 117 N. Y. Supp. 1091.

Defendant claims, however, that the right of access to the lake is inalienable in the public, and that the Legislature was without power to cut off that access, or to authorize the commissioners so to do.    In the opinion of the Appellate Division, it is stated:

"The lake as a highway still remains, and access to it is not cut off.    There are many other means of access to it besides this old highway, which was never designed as a means of access to the lake, and the authorities have no power to retain the highway for that purpose."

Upon this trial new evidence was introduced, and it is now found as matter of fact that the public did have access to the lake over the old highway, and that access is now cut off.

The defendant was commissioner of highways of the town of Livonia.    He was as such—

"an independent public officer, exercising public powers and charged with public duties specially prescribed by the statute law of the state."    Flynn v. Hurd, 118 N. Y. 19, 27, 22 N. E. 1109, 1110.

"The road was not the property of the town.    Its use was public, not for the benefit of individuals of the town alone, but for the whole community. True, the town elected commissioners of highway, and determined the amount to be raised by taxation for its improvement; but that election was only a convenient method of designating the commissioner as a public servant to discharge his duty thus imposed upon him for general public purposes."    People ex rel. Keuren. v. Town Auditors, 74 N. Y. 315.

Hemlock Lake is a body of navigable water.    The riparian owners owned the bed of the lake to its center.    The state, nevertheless, retained its sovereignty over the waters for the public right of passage. This right grows out of and is based upon public benefit in promoting trade and commerce, supposed to be derived from keeping open navigable bodies of water for public highways for the common use of the people.    Smith et al. v. Rochester, 92 N. Y. 463, 44 Am. Rep. 393.

"The public have the right of way in every stream which is capable in its natural state and its ordinary volume of water of transporting, in a condition fit for market, the products of the forests or mines or the tillage of the soil upon its banks."    Morgan v. King, 35 N. Y. 454, 459 (91 Am. Dec. 58).

This sovereignty is the subject of legislation.

"The Legislature of this state had the power to modify to any extent the public right in the navigable waters of Hemlock Lake, or to absolutely destroy the same."    Langdon v. Mayor of N. Y., 93 N. Y. 128, 155, 156.

No individual rights of property are concerned in this litigation. The city had acquired the fee in the lands over which the route of the old highway was located.    The city is the riparian owner of the entire shore of the lake; consequently, no claim arises subject to condemnation proceedings or notice.    The only use or right which is claimed to be presented by the defendant is that of the public in general.

"The right of the public in the street, such as the right of passage and travel, is within the supreme and absolute control of the Legislature."    People v. Kerr, 27 N. Y. 188, 192.

Even a riparian owner has no right which the state may not destroy at pleasure by a construction or filling in beyond his outer line, and

this, too, without compensation to him. Slingerland v. International Contracting Company, 169 N. Y. 60, 70, 61 N. E. 995, 56 L. R. A. 494.

It will be asserted, however, that these powers have been asserted thus broadly only when called into exercise for the general public benefit in the improvement of navigation, either by the federal or state government. I do not believe the distinction is well taken. The public health is certainly of as much concern as such rights of navigation as are shown to exist or to have formerly existed upon Hemlock Lake.

It is to be noted that no individual is shown to have been bereft of any particular advantage in being deprived of sailing upon the lake, fishing in the waters thereof, or cutting ice therefrom. It was an incident of the road that it touched the lake. As a thoroughfare, the public is better served in its present condition than formerly. A special proceeding instituted to lay out a highway to the shores of the lake might bring more sharply the question here raised before the court. Nevertheless, I think the defendant has the right to interpose the defense now made, inasmuch as, if the change of the route was unauthorized and void, it remained his duty to keep open the old line, which would then be the highway for the use of the public.

In performing this, his assumed duty, he did enter upon the old line, and this action was brought to restrain his interference therewith. The whole power and scope of his authority is statutory. The rights and interests of the public, both on navigable waters and highways, are likewise statutory, so far as the so-called jus publicum is concerned, and with that only are we dealing in this action. I know it is said in Bedlow v. N. Y. Floating Dry Dock Co., 112 N. Y. 263, 274, 19 N. E. 800, 804, 2 L. R. A. 629:

"The right of the people to use the natural public highways of the state is jus publica, and cannot be taken away or seriously impaired by any legislation whatever."

The courts have become compelled to construe the language of the opinions relative to the issues of the case wherein the language is used, and not in the broad meaning of the words abstracted from the case. It was decided in the above case that lessees of wharf rights cannot as against the lessor acquire an absolute right to occupy by permanent structures the waters in front of the wharf, to the destruction of its value and usefulness, and, further, that the right in the city (New York) to erect structures in navigable waters is subject to the sovereign authority over such highways. The language quoted above goes beyond the need of the case. Perhaps the same may be said of the quotations hereinbefore given; but it seems to me they are more in accord with the general weight and trend of authority upon this subject than the language used in 112 N. Y. 263, 19 N. E. 800, 2 L. R. A. 629, supra. Moreover, the rights of the public in the water and their use of Hemlock Lake are not directly involved here. The complaint is that access to the waters of the lake is cut off. If there are rights demanding access to the lake, a way may be provided under the provisions of the statute for the laying out of new roads.

Upon examination, however, it would be found that these rights are

largely theoretical now. It is problematical how many, if any, individuals could be found to assert their right to take ice from, fish in, or sail thereon, as a public body of water. The right to cut ice is subject to legislative enactment, which may give exclusive privileges. Slingerland v. International Contracting Co., 169 N. Y. 60, 61 N. E. 995, 56 L. R. A. 494; American Ice Company v. Catskill Cement Co., 43 Misc. Rep. 221, 88 N. Y. Supp. 455; Laws 1895, c. 953; Laws 1899, c. 264. Constant legislation is had upon the subject of fisheries. There is practically speaking no trade or commerce now that finds Hemlock Lake necessary for its use.

It would be difficult to justify an individual right to sail on the lake for pleasure as against legislation concerning the health and growth of a great and growing municipality. The pleasure of a few should give way to the needs of the many. Legislation which conserves the health of the people is certainly to be received with all the favor that the law allows. From no standpoint, it seems to me, can the act of the Legislature here in question be successfully attacked, and plaintiff is within the terms of that act. Its right thereunder must, therefore, be respected, and it is entitled to the relief demanded in the complaint.